IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gary A. White, Jr., #309726, | ) | C/A No.: 1:15-365-DCN-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Gary A. White, Jr., is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 10, 11]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by May 4, 2015. [ECF No. 12]. After Petitioner failed to file a response, the court issued an order on May 12, 2015, directing Petitioner to advise by May 26, 2015, whether he wished to continue with the case. [ECF No. 14]. On May 15, 2015, Petitioner requested and was granted an extension until June 16, 2015, to file a response. [ECF No. 18]. After Petitioner failed to file a response, the court issued a report and recommendation ("R&R") on June 23, 2015, recommending the case be dismissed for Petitioner's failure to prosecute. [ECF No. 20]. On July 13, 2015, Petitioner filed an objection to the R&R [ECF No. 22] and a motion for

a hearing [ECF No. 23].  On July 15, 2015, the court reversed the R&R and remanded for consideration of Petitioner's response to the motion for summary judgment. [ECF No. 24]. The matter having been fully briefed, it is ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.     Factual and Procedural Background

The South Carolina Supreme Court recited the facts of Petitioner's crimes as follows:

> This case arises from an armed robbery of a convenience store in Columbia, South Carolina. After midnight on April 19, 2004, Gary White and Anthony Morris were riding in a car driven by Roy Wiggins. As Wiggins drove past a convenience store, White told Wiggins to turn around and go back to the store. Wiggins complied. Wiggins drove to the store and parked behind it. White and Morris exited the car, with Wiggins staying behind in the driver's seat. White was carrying a gun.

> White and Morris entered the convenience store. Gwen Anthony, the store manager, was restocking the grill area when White and Morris entered suddenly. Anthony described the robbers' entry as a "flash."

> White, armed with the gun, grabbed Anthony, put his arm around her, and pointed the gun to her neck. Morris moved through the store stealing cash, lottery tickets and an 18-pack of beer while White continued to hold Anthony at gunpoint. While Morris was at the beer cooler, White, while standing up, apparently lost consciousness.

> Anthony testified that White's head fell to her shoulder, and the gun dropped from her neck. Although he was unconscious for only a few seconds, Anthony observed that White's breath smelled like alcohol, his gun was black with a silver top, and his jeans were baggy and dark in color. With the 18-pack of beer in hand, Morris ran up the aisle toward the door and screamed at White, waking him. White, still holding Anthony, returned the gun to her neck and began to move toward the door, forcing her to accompany him. As they exited the store, White pushed Anthony away and

ran in the opposite direction. At that very moment, Officer Rouppasong of the Columbia Police Department pulled into the store parking lot on a routine break.

Upon his arrival on the scene, Officer Rouppasong saw two people: Anthony, waving and flagging him down and another person running away from the store. Rouppasong described the man he saw running as a black male, wearing a white t-shirt and dark colored pants, holding or carrying something in one of his hands. Rouppasong remained in his vehicle and followed White. As he followed him around the corner of the store, Rouppasong saw a car parked on the street. Rouppasong saw a black male (later identified as White) exit the car on the passenger side and flee. Rouppasong did not give chase; instead, he stayed with the vehicle and Wiggins. Officer Gunter, with the K9 unit, was called to the scene to search for the suspect.

Officer Gunter arrived on the scene approximately thirty minutes after the robbery. Once there, Rouppasong relayed the necessary information that allowed Gunter to know where to initiate the track. Gunter and his tracking dog, Aurie, began tracking and soon found White nearby sleeping next to some bushes, gun in hand. Rouppasong testified that the man he saw lying by the bushes, asleep, was the same man he saw exiting the store and fleeing from the crime scene. There were two other in-court eyewitness identifications of White. Wiggins testified that White left his car with a gun, returned to his car a short time later, and then fled when police arrived. The second identification came from Morris.

[ECF No. 11-3 at 105]. *State v. White*, 676 S.E.2d 684, 685 (S.C. 2009).

Petitioner was indicted by the Richland County Grand Jury during the July 2004 term of court for two counts of armed robbery (2004-GS-40-3016, -3018) and for kidnapping (2004-GS-40-3017). [ECF No. 11-3 at 204, 206, 208]. Public Defenders Lanelle Durant and Stacey Owings represented Petitioner at a jury trial on June 14–16, 2005, before the Honorable James R. Barber, Circuit Court Judge. [ECF No. 11-1 at 3 *et seq.*]. The jury found Petitioner guilty as charged [ECF No. 11-3 at 20–21], and Judge

Barber sentenced Petitioner to concurrent terms of life without parole on each of the convictions [ECF No. 11-3 at 28].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals") and on appeal was represented by Aileen P. Clare, Esq., Assistant Appellate Defender, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense.  Attorney Clare filed a motion to remand for a new trial, or in the alternative, for a hearing into new evidence. On December 9, 2005, the Court of Appeals issued an order denying the motion to remand. On September 7, 2006, Attorney Clare filed a merits brief raising the following issues:

1.    Is appellant entitled to a new trial based on newly-discovered evidence, when his co-defendant, who testified against him at trial, has retracted his testimony?

2.    Did the trial court err by denying appellant's objection to the state's expert witness, a dog-handler, without requiring the state to establish the underlying reliability of dog-tracking as a scientific or technical field?

[ECF No. 11-8 at 4].  On January 16, 2007, the Court of Appeals filed an unpublished decision affirming the convictions. [ECF No. 11-3 at 32–52]. On March 22, 2007, the Court of Appeals denied Petitioner's January 29, 2007, petition for rehearing [ECF Nos. 11-3 at 53–57 (petition); 58 (order)]. On April 23, 2007, Attorney Durant filed a petition for writ of certiorari [ECF No. 11-3 at 59–68], raising the following issues:

1.    The Court of Appeals incorrectly held that the dog tracking evidence was admissible without requiring the state to demonstrate the underlying reliability of dog tracking before admitting the police dog-handler's testimony into evidence.

4

> 2.      The Court of Appeals incorrectly held that petitioner was not entitled
> to a new trial or in the alternative to remand for a hearing on the motion
> based on newly-discovered evidence when his co-defendant, who testified
> against him at trial, has retracted his testimony.

[ECF No. 11-3 at 61]. The South Carolina Supreme Court granted certiorari on November 19, 2007, and directed the parties to file the appendix and briefs. [ECF No. ECF No. 11-11]. Thereafter, both side filed briefs. [ECF No. 11-3 at 77–103]. After hearing argument on February 4, 2009, the South Carolina Supreme Court issued an opinion on April 27, 2009, affirming in result the Court of Appeals. [ECF No. 11-3 at 104–109]. On May 28, 2009, the court denied Petitioner's May 12, 2009, petition for rehearing. [ECF Nos. 11-12; 11-13]. The remittitur was issued on May 28, 2009. [ECF No. 11-14].

On August 5, 2009, Petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance of counsel and newly-discovered evidence. [ECF No. 11-3 at 110–117]. On October 18, 2010, a PCR evidentiary hearing was held before the Honorable L. Casey Manning, Circuit Court Judge, at which Petitioner and his counsel, Mark E. Schnee, Esq., appeared. *Id.* at 131–179. On August 31, 2011, Judge Manning filed an order of dismissal. *Id.* at 180–197.

On September 13, 2011, Petitioner filed a pro se Rule 59(a) and (e), SCRCP, motion for rehearing. [ECF No. 11-15]. The South Carolina Supreme Court took no action on the document, as Petitioner was represented by counsel. [ECF No. 11-16].

On September 15, 2011, PCR counsel filed a notice of appeal on Petitioner's behalf. [ECF No. 11-3 at 198]. On September 12, 2012, David Alexander, an Appellate

5

Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a *Johnson*[1] petition for writ of certiorari, raising the following issue: "Whether petitioner should be granted a new trial because a key witness recanted his testimony after petitioner's trial?" [ECF No. 11-17]. Attorney Alexander sought to be relieved as counsel. *Id.* at 12.

The South Carolina Supreme Court denied the petition on December 19, 2013, and granted counsel's request to withdraw. [ECF No. 11-18]. The remittitur was issued on January 6, 2014. [ECF No. 11-19].

Petitioner submitted a letter to the court on January 2, 2014, which the court construed as a motion to recall the remittitur. [ECF No. 11-20]. The court granted the motion to recall the remittitur on January 16, 2014. [ECF No. 11-21]. Thereafter, Petitioner submitted a brief. [ECF No. 11-22]. In an order dated May 7, 2014, the court indicated that "[a]fter careful consideration of petitioner's petition, we adhere to our previous ruling." [ECF No. 11-23]. The remittitur was issued on May 21, 2014. [ECF No. 11-24].

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

Petitioner filed this petition for writ of habeas corpus on January 21, 2015. [ECF No. 1-2 at 2].[2]

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One:**      The Trial Court Erred by denying Appellants objection to the States Expert Witness, a dog-handler, without requiring the State to Establish the Underlying Reliability of dog tracking as a scientific or technical field.

Supporting facts:
A) The trial court erred by denying applicant's objection to the state's expert witness, a dog-handler, without requiring the state to establish the underlying reliability of dog-tracking as a scientific or technical field.

B) The Court of Appeals incorrectly held that the dog tracking evidence was admissible without requiring the state to demonstrate the underlying reliability of dog tracking before admitting the police dog-handler's testimony into evidence.

C) The Court of Appeals incorrectly held that the dog tracking evidence was admissible without requiring the state to demonstrate the underlying reliability of dog tracking before admitting the police dog-handler's testimony into evidence.

---

[2] The petition was received by the court on January 26, 2015, and docketed on January 27, 2015. [ECF No. 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on January 21, 2015. [ECF No. 1-2 at 2].

**Ground Two:**          Newly discovered Evidence

Supporting facts:
A-1) Petitioner incorporates his state court motion to remand for a new trial, or in the alternative, for a hearing into new evidence.

A-2) The Court of Appeals incorrectly held that petitioner was not entitled to a new trial or in the alternative to remand for a hearing on the motion based on newly-discovered evidence when his co-defendant, who testified against him at trial, has retracted his testimony.

A-3) Appellant is entitled to a new trial based on newly-discovered evidence because his co-defendant, who testified against him at trial, has retracted his testimony.

**Ground Three:**          Ineffective Assistance of Counsel

Supporting facts:

A)      The Applicant contends that his conviction is in violation of the Fifth amendment, U.S. Constitution. Applicant was convicted on a non-charged offense, which violated his substantial rights to be convicted, if convicted at all on a presentment of a indictment by the Grand Jury.

B)      On Ground 10(a) of my PCR Application, I amend that assertion to state my Trail Counsel provided "Deficient Performance" in failing to pursue a ruling on the clear objection to the "Hand of One Hand of All" instruction to be given to the jury. I move for Trial Transcript page 407, line 16–page 408, line 7, to be entered as Applicants Evidence one (1) as proof within this record that my Trial Counsel did not move for ruling on an important objection to a burden-shifting instruction.

C)      On Ground 10(b) of my PCR Application, I amend that assertion to state that my Trial Counsel provided 'Deficient Performance' in failing to object to a material State witness committing perjury before the jury. Again, your Honor, Applicant's Evidence two (2) is State witness Anthony Morris admitting to the Court that his initial statement to police was a complete lie; here, the record shows Trial Counsel Stacey Owings did not object to Morris

commission of perjury when it surfaced, nor did Owings object in her Cross Examination at Trial Transcript page 397, line 14 – page 403, line 18, which I'd move to have admitted into this record as Applicant's Evidence three (3) as proof of Counsel not objecting to very damaging and prejudicial evidence against Applicant.

D)    The PCR Court erred in denying relief on Ground 10(c), APCR, where Trial Counsel Owings never testified in PCR contrary to White's testimony in PCR regarding Trial Counsel's failure to pursue Ruling on Objection claim.

**Ground Four:**    Newly discovered Evidence (1) See Appendix P.C.R. Transcript Pg. 635–676. Ineffective Assistance of Counsel for failing to subpoena co-defendant Anthony Terrell Morris to authenticate and be cross examined about recanted statement, for failing to subpoena 1st Chair Lanelle Durant to testify. 2nd Chair Stacy Owings was unable to sufficiently go indept in the record being that she was asked to preform duties on a whim within a week of petitioners trial. (See at: Tr Tn ph. 665 Ln 11–12). Petitioner further states that P.C.R. counsel was ineffective for failing to file the 59(e) motion to make the court rule on all P.C.R. issues presented.  Petitioner also argues that there was no way he could have proven his claims without the aid of P.C.R. counsel. When South Carolina has a recognized prohibition against hybrid representation See: Dennison v. State 639 S.E.2d 35, State v. Cabrera 569 S.E.2d 472, Jones v. State 558 S.E.2d 517, Foster v. State 379 S.E.2d 907, State v. Stuckey 508 S.E.2d 564, McKaskie v. Wiggins 465 U.S. 168. Thus there was no way petitioner could have subpoenaed these witnesses See: Bannister v. State 509 S.E.2d 809, Beaver v. Thompson 93 F3d 1186, Glover v. State 458 S.E.2d 538. Nor get a ruling on all issues raised at P.C.R. See: Marlar v. State 653 S.E.2d 266, Bostick v. Stevenson 589 F.3d 164. Also see Martinez v. Ryan.

A) The Court of Appeals incorrectly held that petitioner was not entitled to a new trial or in the alternative to remand for a hearing on the motion based on newly-discovered evidence when his co-defendant, who testified against him at trial, has retracted his testimony.

B) Petitioner should be granted a new trial based on the after-discovered evidence of the recantation of a key witness's testimony after petitioner's trial.

[ECF No. 1 at 5–10; 1-1 (errors in original)].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner

present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question

presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, et seq.; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3]  Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"*outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

14

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by

the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.*, quoting *Jackson v. Virginia*,

18

443 U.S. 307, 332 n. 5 (1979)).

### D.     Analysis

Respondent argues that Petitioner's claims are either not cognizable in habeas or are procedurally defaulted. The undersigned agrees.

### 1.     Ground One

Petitioner's claim in Ground One is not cognizable as it fails to allege any violation of federal law. In Ground One, Petitioner alleges the state courts erred in admitting the testimony of Officer Gunter, a dog handler, without requiring the state to establish the underlying reliability of dog tracking as a scientific or technical field. Because this claim fails to allege any violation of federal law, it is not cognizable in habeas review. Evidentiary rulings are generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) ("[A] claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). Evidentiary rulings will not be considered in federal habeas "'unless [the] erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)). The only proper inquiry, if any, is whether the admission of the evidence itself so infected the entire trial that the resulting conviction violated due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States."). Petitioner has raised a claim based upon state law and, therefore, has failed to allege an error upon which relief may be granted. 28 U.S.C. § 2254 (d)(1) (application shall not be granted unless the claim was based on an improper application of federal law).

2.      Grounds Two and Four

Similarly, Petitioner's claims in Ground Two and Four are not cognizable, as they fail to allege any violation of federal law. In Ground Two, Petitioner alleges he is entitled to a new trial because one of his codefendants signed a statement retracting his trial testimony, and in Ground Four, Petitioner claims the Court of Appeals erred in failing to grant him a new trial based on the newly-discovered evidence.  Because Petitioner does not allege any error in the application of federal law, these claims are not cognizable. Petitioner's arguments for a new trial are based on state law, which dictates when a party is entitled to a new trial based on newly-discovered evidence.  However, newly-discovered evidence, absent a constitutional violation, is not cognizable in federal habeas. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

3.      Grounds Three and Four

a.      Procedural default

In Grounds Three and Four, Petitioner alleges the following claims of ineffective

assistance of counsel by trial and PCR counsel:

(1)    trial counsel failed to protect Petitioner's Fifth and Sixth Amendment rights;

(2)    trial counsel failed to obtain a clear ruling on objection to the "hand of one, hand of all" instruction;

(3)    trial counsel failed to object to codefendant Morris's perjury;

(4)    the PCR court erred in rejecting his claim that trial counsel were ineffective for failing to pursue the objection to the "hand of one, hand of all" charge;

(5)    trial counsel failed to subpoena codefendant Morris to authenticate and be cross examined about his recanted statement; and

(6)    PCR counsel failed to subpoena 1st Chair Lanelle Durant to testify; failed to file a 59(e) motion to address all issues.

However, the PCR court did not rule upon them, rendering them procedurally defaulted.

Petitioner has not shown sufficient cause and prejudice to excuse the default of these claims. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding that to show prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright*, 433 U.S. at 88–91; *Murray*, 477 U.S. at 496;

21

*Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner argues that he filed a pro se Rule 59(e) motion after the PCR court's order dismissed his PCR application, alerting the state court to the failure of the PCR court to rule on all the issues he raised. The South Carolina Supreme Court did not take any action on the pro se motion because Petitioner was represented by counsel.

Liberally-construed, Petitioner contends that a recent Supreme Court case entitles him to a review of his claims of ineffective assistance of PCR counsel, citing *Martinez v. Ryan,* —— U.S. ——, 132 S.Ct. 1309, 1315 (2012) ("[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of ineffective assistance at trial."). In *Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1917–18 (2013), the Supreme Court held that its *Martinez* decision provided

> that a "narrow exception" should "modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez,* 566 U.S. at, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system. . . . Indeed, the right to counsel is the foundation for our adversary system." *Id.* —— at ——, 132 S.Ct. at 1317.
>
> Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause," excusing a defendant's failure to raise (and thus

procedurally defaulting) a constitutional claim. *Id.* —— at ——, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. *Id.* at, 132 S.Ct. at 1317–1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." *Id.* at, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were *Coleman* read broadly) deprive a defendant of any review of that claim at all. *Martinez, supra* at,132 S.Ct. at 1316.

We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."*Martinez, supra* 1309 at ——, 132 S.Ct. at 1318–1319, 1320–1321.

*Trevino v. Thaler,* —— U.S. ——, —— – ——, 133 S.Ct. 1911, 1917–18 (2013); *see also Gray v. Pearson,* 2013 WL 2451083 at * 2 (4th Cir. June 7, 2013) ("The Supreme Court had previously held in *Coleman* that because a habeas petitioner has no constitutional right to counsel in state postconviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish "cause" to excuse a procedural default." *Coleman,* 501 U.S. at 757. The Court established an exception to that rule in *Martinez.*").

Therefore, because, under South Carolina law, a claim of ineffective assistance of

trial counsel is raised in a PCR application; *cf. State v. Felder,* 290 S.C. 521, 351 S.E.2d 852 (S.C.1986); *Bryant v. Reynolds,* No. 12–1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); *Gray,* 2013 WL 2451083, at *4, fn.*, the undersigned considers Petitioner's claim of ineffective assistance of PCR counsel as "cause" for his default below under the revised standard of *Martinez* and *Trevino*.

b.    Merits analysis

In Grounds Three and Four, Petitioner alleges the following claims of ineffective assistance of counsel by trial and PCR counsel:

(1)    trial counsel failed to protect Petitioner's Fifth and Sixth Amendment rights;

(2)    trial counsel failed to obtain a clear ruling on objection to the "hand of one, hand of all" instruction and the PCR court erred in rejecting his claim that trial counsel were ineffective for failing to pursue the objection to the "hand of one, hand of all" charge;

(3)    trial counsel failed to object to codefendant Morris's perjury and failed to subpoena codefendant Morris to authenticate and be cross-examined about his recanted statement; and

(4)    newly discovered evidence: PCR counsel failed to subpoena Anthony Morris and trial counsel Lanelle Durant to testify.

(1)    Failure to Protect Petitioner's Fifth and  Sixth Amendment Rights

Petitioner asserts the indictments against him were defective because they did not reference his codefendants and, therefore, did not put him on notice that he was not being tried as a principal, but under the "hand of one, hand of all" theory. Petitioner argues that trial counsel was ineffective in failing to object to the indictments.

Although the PCR court did not address this issue as an ineffective assistance of counsel claim, it did address whether Petitioner was properly on notice that the State's case included codefendants, noting:

> The Applicant had notice that the State's case included the co-defendants. The defense was well aware that the co-defendant(s) were part of the State's case. In fact, trial counsel, in pretrial matters, knew (from the discovery) that one of co-defendants [sic] might mention that that [sic] the Applicant indicated he needed to do the robbery to pay his parole fees. (Transcript p. 6 L. 20–p. 11 L. 25).

[ECF No. 11-3 at 195]. The record supports the PCR court's conclusion that Petitioner had notice that the State's case against Petitioner included his codefendants, to wit: prior to trial, trial counsel had received the codefendants' rap sheets and their statements and knew that Morris's post-plea sentencing was deferred pending his testimony at Petitioner's trial. [ECF No. 11-1 at 8–13]. The PCR court found Petitioner had actual notice of his codefendants and that his testimony to the contrary was not credible. [ECF No. 11-3 at 190]. The PCR court's factual findings are entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness of the trial court's findings only by showing "'clear and convincing evidence to the contrary.'"

25

*Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)).

Independently, Petitioner has failed to show that the indictment was defective for not specifically mentioning his codefendants, as it is "well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *State v. Dickman*, 534 S.E.2d 268, 269 (S.C. 2000). South Carolina courts have recognized that:

> A defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense. [However, m]ere presence and prior knowledge that a crime was going to be committed, without more, is insufficient to constitute guilt. [Rather,] presence at the scene of a crime by pre-arrangement to aid, encourage, or abet in the perpetration of the crime constitutes guilt as a principal.

*State v. Thompson*, 647 S.E.2d 702, 704–05 (S.C. Ct. App. 2007) (internal quotations and citations omitted).

Petitioner has failed to show that trial counsel's representation was deficient for failing to object to the indictment or that he was prejudiced in any way. *See Harrington v. Richter*, 131 S. Ct. 770, 791–92 ("The likelihood of a different result must be substantial, not just conceivable."). Petitioner's claim should be dismissed.

(2)    Failure to Pursue Objection to Jury Charge and Court Error in Rejecting Claim

Petitioner asserts that trial counsel was ineffective for failing to follow up with an objection to the trial court's "hand of one, hand of all" jury instruction that the State requested and that the PCR court erred in rejecting this claim. [ECF No. 11-2 at 158].

26

During the charge conference, trial counsel objected to the charge being given, *id.* at 158–59, 161–62, and the State explained why it requested it:

> Just the fact that videotape and the testimony all show and the Victim's testimony all show that Gary White was the one that held the gun to the Victim's head. He did not take anything. And part of the elements of armed robbery is taking property from another without permission.
>
> And so we are obligated to explain that to the jury that he's just as guilty as Anthony Morris who actually physically took the items away from the store and as guilty as Roy Wiggins who never even entered the store.

*Id.* at 162. The trial court ultimately instructed the jury on "hand of one, hand of all." [ECF No. 11-3 at 3–4]. Trial counsel did not renew its objection once the jury was charged. *Id.* at 11.

Trial counsel was not ineffective for failing to pursue the objection to the "hand of one, hand of all charge" because the charge was proper. *See State v. Niles*, 735 S.E.2d 240, 243 (S.C. Ct. App. 2012) ("If any evidence supports a jury charge, the circuit court should grant the request."). Under the "hand of one, hand of all" theory, one who joins with another to accomplish an illegal purpose is criminally liable for everything done by his accomplice incidental to the execution of the common plan. *State v. Langley*, 515 S.E.2d 98, 101 (S.C. 1999). As counsel for the State explained, the "hand of one, hand of all" charge was necessary because the evidence established that Petitioner had joined with Morris to accomplish the armed robbery, but that Petitioner had not taken anything himself. [ECF Nos. 11-1 at 80–96; 11-2 at 68–74]. Morris, on the other hand, had taken both money and items from the convenience store. *Id.* at 86–92. Thus, the State asked for the "hand of one, hand of all" charge to satisfy its burden of proving all elements of the

crime beyond a reasonable doubt. Because there was evidence to support the charge, the trial court was correct in giving the "hand of one, hand of all" instruction in accordance with state law. Because the charge was proper, Petitioner cannot have been prejudiced by trial counsel's failure to pursue the objection.

(3)    Failure to Object to Evidence

Petitioner claims that trial counsel was ineffective for failing to object to Morris's "perjured" testimony. Morris admitted on direct examination that he lied to police in his original statement, which claimed that he stayed in the back seat of Wiggins's car while Petitioner and Wiggins went into the convenience store. [ECF No. 11-2 at 123–28]. On cross-examination, Morris admitted that his statement to police was a lie. *Id.* at 149–50. Petitioner now argues that trial counsel was ineffective for failing to object to the perjured testimony. Instead of objecting, trial counsel attempted to undermine Morris's testimony incriminating Petitioner in the armed robbery by noting that Morris had previously committed perjury by lying to the police. Trial counsel's strategic use of the fact that Morris had previously lied to police was not ineffective. *See Strickland v. Washington*, 466 U.S. 668, 690–91 (1984) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Independently, Petitioner has not shown that trial counsel had reason to know the

testimony was perjury at the time of trial. The record reflects that trial counsel received the affidavit from Morris confessing his lie about a month after trial. [ECF No. 11-3 at 152].

Further, Petitioner has not met his burden of showing he was prejudiced by trial counsel's actions. Both the Court of Appeals and the South Carolina Supreme Court commented on the strength of the case against Petitioner, noting "substantial evidence of White's guilt" and the "overwhelming evidence of guilt," respectively. Specifically, the Court of Appeals found:

> Ample evidence linked White to the crimes charged. The testimonies of the victim, Gwen Anthony, and co-defendant, Anthony Morris, were corroborated by a surveillance videotape that recorded the crime as it unfolded. In addition, Roy Wiggins, the driver of the escape car, testified against White. Items taken from the crime scene were located in the escape vehicle. Officer Rouppasong witnessed a man carrying something in his hand and wearing dark jeans and a white shirt run from the Circle K parking lot. In pursuit, the officer lost sight of the man briefly and then came upon the escape car. The same man wearing the dark jeans and white shirt ran from the escape car toward the yard of the residence where White was eventually found. Gunter put his tracking dog on the scent at the location where the man exited the vehicle. The area in which the dog began tracking had been secured in order to preserve the evidence. The dog's tracks led to the location where White was discovered. He appeared to be asleep and was clutching a gun in his hand. The gun matched Anthony's description of the weapon the robber carried, and both Morris and Wiggins positively identified it as the gun White had in his possession immediately prior to the robbery.

[ECF No. 11-1 at 49–50].

Therefore, Petitioner's claim should be dismissed.

> (4)    PCR counsel failed to subpoena
>         Anthony Morris and trial counsel Lanelle
>         Durant to testify.

Petitioner argues that PCR counsel failed to subpoena Morris to authenticate and be cross-examined about his recanted statement and failed to subpoena trial counsel Lanelle Durant to testify. Because these witnesses did not testify at the evidentiary hearing, any discussion regarding what they would have testified about at trial is purely speculative. *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness's failure to testify at trial."). Petitioner has not identified how the testimony of these witnesses would have helped his claims of ineffective assistance of counsel. This court finds Petitioner failed to meet his burden of proving PCR counsel was ineffective in not subpoenaing Morris or Durant.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 10] be granted and the petition be dismissed with prejudice. Petitioner's request for an evidentiary hearing [ECF No. 23] should be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 29, 2016                                    Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).